IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 08-0746 |
| IRWIN CRUTCHFIELD | : | |

**SURRICK, J.**                                                                                   **JUNE  29, 2009**

## MEMORANDUM

Presently before the Court is Defendant Irwin Crutchfield's Motion to Suppress Physical Evidence.  (Doc. No. 8.)  For the following reasons, the Motion will be denied.

**I.     BACKGROUND**

On December 16, 2008, the grand jury returned a three-count indictment charging Irwin Crutchfield ("Defendant") with various drug and firearm offenses.  (*See* Doc. No. 1.)  The indictment charged Defendant with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1); possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

**II.     FINDINGS OF FACT**

On December 12, 2006, Defendant was released on parole from a Pennsylvania state prison.  (Suppression Hr'g Tr. 9, June 24, 2009.)  Conditions of Defendant's parole included that Defendant continue to reside at 319 Harding Boulevard in Norristown, Pennsylvania, and that Defendant obtain prior written permission from the Pennsylvania Board of Probation & Parole before moving from that address.  (*Id.* at 10; *see also id.*, Gov't Ex. G-1.)  Defendant agreed that parole agents could conduct warrantless searches of his residence:

I hereby agree that . . . I expressly consent to the search of my person, property and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole.

(Suppression Hr'g Tr., June 24, 2009, Gov't Ex. G-1.)  Defendant did not limit his express consent to search of his "approved residence" at 319 Harding Boulevard.  Rather, Defendant agreed that parole agents could conduct a warrantless search of his "residence," without limitation.

In mid-June of 2007, parole agents received information from two anonymous female sources that Defendant was living with his girlfriend, Terri Lee Jackson ("Jackson"), at 524 E. Basin Street in Norristown rather than at Defendant's approved address, 319 Harding Boulevard. (Suppression Hr'g Tr. 12, June 24, 2009.)  The women also reported that Defendant was selling narcotics from the Clubhouse bar in Norristown and from the residence at 524 E. Basin Street. (*Id.*)  The women told the parole agents that Defendant was driving a black SUV, a Kawasaki or a Suzuki motorcycle, and a maroon Buick with chrome rims.  (*Id.* at 13.)

Parole agents followed up on the anonymous report.  (*Id.*)  On June 28, 2007, parole agent Harry Gaab ("Agent Gaab") and another agent drove by the Clubhouse bar in a government vehicle and saw Defendant outside leaning against a railing.  (*Id.* at 15.)  Agent Gaab made eye contact with Defendant, who "appeared startled and almost scared" and who continued to watch the parole agents in the vehicle.  (*Id.* at 15-16.)  In July 2007, Agent Gaab learned that Defendant had been involved in a motorcycle accident.  (*Id.* at 16.)  Defendant's involvement in the motorcycle accident was consistent with the information from the anonymous sources that Defendant had a motorcycle.

In August 2007, Defendant was incarcerated on charges that were later withdrawn.  (*Id.* at

19.)  Terri Jackson called Agent Gaab to inquire about when Defendant was to be released from prison.  (*Id.*)  Jackson, who lives at 524 E. Basin Street, asked Agent Gaab when Defendant "was going to come home."  (*Id.*)  Defendant was released from prison on or around September 5, 2007.  (*Id.*)  At the end of September 2007, Agent Gaab saw Defendant driving a black Ford Expedition SUV, consistent with the description given by the anonymous sources.  (*Id.* at 20.)

On November 2, 2007, Agent Gaab went to the Clubhouse bar with other parole agents intending to search Defendant for contraband, believing that he had corroborated the information from the anonymous sources.  (*Id.* at 20-22.)  When Defendant saw the parole agents, he ran.  (*Id.* at 22.)  When parole agents ultimately located Defendant that night he had $1,562 in cash on his person.  An operational cell phone, which Defendant was prohibited from having under the terms of his parole, was ten feet away.  (*Id.* at 23.)  Agent Gaab also searched Defendant's car and found a love letter from Jackson describing an intimate encounter that had occurred at 4:00 in the morning and stating that she would see Defendant when he got home.[1]  (*Id.* at 24-25.)  The letter supported the fact that Defendant was residing with Jackson at 524 E. Basin Street, as the sources had reported.  (*Id.* at 25.)

On January 24, 2008, Defendant went to Agent Gaab's office and delivered parole paperwork.  (*Id.* at 26.)  Agent Gaab followed Defendant after he left.  (*Id.*)  Defendant was driving the black Ford Expedition SUV.  (*Id.*)  Agent Gaab saw Defendant drive the SUV to 524

---

[1] The letter stated, "To my one and only love, i terri lee jackson loves u with all my heart, body, mind, and soul.  Please don't let the streets separate are family, we have come to far.  Just a little letter to remind u that this is were the love is at.  Have a good day a work and I will see you when you get home. Love, your one and only, Terri. XOXOXO.  P.S.  that 4:00 in the morning [sex] was so, so, so, . . . good."  (Suppression Hr'g Tr., Gov't Ex. G-2) (all errors and formatting in original).

E. Basin Street, back the SUV into the driveway to park, retrieve keys from his pocket, and enter the front door of the residence at 524 E. Basin Street using the keys.  (*Id.*)  Agent Gaab knew from his training and experience that "it's common from people who don't want their vehicles to be identified to hide the license tag, which Pennsylvania tags are always in the rear.  So all they have to do is back up to a wall, back up to a garage so you can't see the license tag from the street." (*Id.* at 26-27.)  The next morning, Agent Gaab drove by 524 E. Basin Street and saw that Defendant's SUV was parked in the same spot.  (*Id.* at 27.)  Agent Gaab also drove by Defendant's place of employment and saw that Defendant's maroon Buick had been replaced with a gold Buick Park Avenue with expensive tires and chrome rims.  (*Id.*)  Defendant did not notify the parole officers about the change in vehicle, which the terms of parole required.  (*Id.*)

In February, 2008, Agent Gaab confirmed with an official at the United States Postal Inspection Service that Defendant was receiving mail at 524 E. Basin Street.  (*Id.* at 28.)  On March 10, 2008, Agent Gaab made an unscheduled visit to 319 Harding Boulevard, Defendant's approved address.  The individual who answered the door told Agent Gaab that Defendant did not live there.  (*Id.* at 29-30.)  The individual told Agent Gaab that Defendant lived on Basin Street.  (*Id.* at 30.)  Agent Gaab was familiar with the location of Defendant's bedroom at the Harding Street address and he entered the residence and went to Defendant's bedroom.  Agent Gaab saw no male clothing, shoes, mail, alarm clock, keys, personal hygiene items, or dirty clothes in Defendant's bedroom.  (*Id.* at 31-32.)  Agent Gaab spoke to Defendant after returning to the office, and Defendant told him that he was living at 319 Harding Boulevard.  (*Id.* at 32.)

On March 19, 2008, Agent Gaab saw Defendant enter 524 E. Basin Street using keys from his pocket.  (*Id.* at 33.)  On April 7, 2008, Agent Gaab saw Defendant's black Ford

Expedition SUV parked in a backed-in position at 524 E. Basin Street between 7:00 or 7:30 in the morning.  (*Id.* at 34.)  Agent Gaab returned to 524 E. Basin Street that evening and saw Defendant again take keys from his pocket and enter the residence.  (*Id.* at 35.)  Two days later, on April 9, 2008, Agent Gaab again saw Defendant entering the residence at 524 E. Basin Street.  (*Id.* at 37.)  At this point, Agent Gaab decided that it was time to conduct a search of the residence where he suspected Defendant was living.  (*Id.* at 38.)

On April 11, 2008, Defendant reported to the parole office at Agent Gaab's request.  (*Id.* at 40.)  Defendant was taken into custody.  Defendant was found with keys and $889 in cash on his person and three operational cell phones in his vehicle.  (*Id.* at 40-41.)  Defendant's job paid $15 per hour.  (*Id.* at 41.)  Agent Gaab then traveled to 524 E. Basin Street to execute a search warrant that he had obtained from a District Justice.  (*Id.*)  Agent Gaab knocked on the front door for approximately two minutes and announced, "State Parole, is anybody home?"[2]  (*Id.* at 41-42.)  Agent Gaab used the keys taken from Defendant to open the door of 524 E. Basin Street.  (*Id.* at 42.)  Agent Gaab again announced, after partially opening the door, "State Parole, is anyone home?"  (*Id.*)  The agents entered the house and encountered Jackson inside with an infant.  (*Id.* at 42-43.)

During the search of 524 E. Basin Street, parole agents found male clothing in Defendant's size in a closet half of which was devoted to male clothing.  (*Id.* at 43.)  Agent Gaab

---

[2] Roslyn Denise Houston, who lived across the street from 524 E. Basin Street, was watching Agent Gaab from her position in her car across the street, about twenty-five feet away. (Suppression Hr'g Tr. 91, June 24, 2009.)  Houston testified that Agent Gaab and the other agents waited two or three minutes before going in the house.  (*Id.* at 93.)  Houston "didn't hear any yelling" and "cannot say that they were knocking."  (*Id.*)  Houston heard no noise coming from the area.  (*Id.* at 93-94.)

recognized some of the clothing as belonging to Defendant.  (*Id.*)  In addition, Agents found mail with Defendant's name on it, Defendant's driver's license and commercial driver's license, a motorcycle, and a box of paperwork listing Defendant's name.  (*Id.* at 43-44.)  Parole agents also found suspected contraband at 524 E. Basin Street.  (*Id.*)  Inside the box containing Defendant's paperwork, parole agents found "apple baggies" that Agent Gaab recognized from his experience as a trademark bag for distributing cocaine and marijuana.  (*Id.* at 44.)  Inside a nylon bag used to store motorcycle helmets, parole agents found what appeared to be powder cocaine.  (*Id.* at 45.)  Parole agents found additional cocaine-like substances in a motorcycle jacket.  (*Id.* at 46.)  Finally, parole agents found a handgun, a box of ammunition, and a digital scale inside of a locked toolbox that parole agents used Defendants keys to open.  (*Id.* at 48-49.)  Upon discovery of the suspected contraband, Agent Gaab contacted the Norristown Police Department and the Montgomery County Detective Bureau, who later obtained a second search warrant for 524 Basin Street which they executed.  (*Id.* at 47-49.)

## III.   CONCLUSIONS OF LAW

Defendant seeks suppression of the physical evidence that the parol officers found during the April 11, 2008 search of the residence at 524 Basin Street.  Defendant also seeks suppression of physical evidence found later in the day as a result of the execution of the second search warrant.  Defendant argues that the searches violated the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution and the Pennsylvania Rules of Criminal Procedure.  (Doc. No. 8 ¶ 9.)  Defendant contends that (1) the parole agents lacked legal authority to obtain the initial search warrant; (2) the initial search warrant lacked probable cause; and (3) the parole agents violated the knock-and-announce rule.  (Doc. No. 8

¶ 9.)  Defendant argues that items seized as a result of the second search warrant should be suppressed as fruit of the poisonous tree.  The Government maintains that the parole agents did not need the search warrant to search 524 E. Basin Street.  (*See* Suppression Hr'g Tr. 103, June 24, 2009.)  According to the Government, parole agents had the right to search 524 E. Basin Street since they had reasonable suspicion to believe that Defendant was living there and in violation of his parole.  (*Id.* at 104.)

Courts have consistently held that parole is a privilege – not a right – and that the government must maintain a supervisory role over the parolees or other similarly-situated individuals to ensure the safety of the community.  *See Griffin v. Wisconsin*, 483 U.S. 868, 874-75 (1987); *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).  Conditions are imposed on the parolee to ensure not only that the parolee is in fact engaged in a fruitful rehabilitative process but also to protect the safety of the community.  *See Morrissey*, 408 U.S. at 483 ("Release of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts.").  "[I]t must be remembered that the very assumption of the institution of [parole] is that the [parolee] is more likely than the ordinary citizen to violate the law."  *United States v. Knights*, 534 U.S. 112, 120 (2001) (quoting *Griffin*, 483 U.S. at 880).  Thus, the parole agency is permitted to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a parolee does damage to himself or society. The agency "must be able to proceed on the basis of its entire experience with the [parolee] and to assess probabilities in the light of its knowledge of his life, character, and circumstances."  *Griffin*, 483 U.S. at 879.

7

Given the unique needs of the parole system, "the Fourth Amendment neither requires a warrant nor probable cause before a parole agent may search a parolee, his property, or his residence." *United States v. Miller*, No. 04-0636, 2005 WL 758246, at *2 (E.D. Pa. Apr. 1, 2005), *aff'd*, 267 Fed. App'x 152 (3d Cir. 2008).  Indeed, parole officers may conduct warrantless searches of parolees and their residences based on "no more than reasonable suspicion" of parole violations.  *United States v. Baker*, 221 F.3d 438, 444 (3d Cir. 2000); *see also id.* at 443-44 ("Under normal circumstances, the Fourth Amendment requires government officials to have both probable cause and a warrant to conduct a search.  In the case of parolees, however, the requisite level of suspicion is reduced and a warrant is not required.").  When parole officers have reason to believe that a parolee may have violated parole, they are "duty-bound to investigate," including searching the parolee's residence when there is reasonable suspicion that such a search may turn up evidence of noncompliance with the conditions of parole.  *United States v. Hill*, 967 F.2d 902, 910 (3d Cir. 1992).

"Reasonable suspicion" is determined from the totality of circumstances.  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"  *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).  "[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."  *Arvizu*, 534 U.S. at 274 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  In addition, "[t]he fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search."  *United States v. Sczubelek*,

402 F.3d 175, 182 (3d Cir. 2005) (quoting *Knights*, 534 U.S. at 118).  If a search is reasonable,

no constitutional problem exists because the Fourth Amendment only protects individuals from

unreasonable searches and seizures.  *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602,

619 (1989).  In determining whether a search was reasonable, the Court must weigh all of the

circumstances surrounding the search or seizure and the nature of the search or seizure itself.  *See*

*id.*  The Court must balance "on the one hand, the degree to which [the search] intrudes upon an

individual's privacy and, on the other hand, the degree to which [the search] is needed for the

promotion of legitimate governmental interests."  *Knights*, 534 U.S. at 119.

      This case turns on the legality of Agent Gaab's search of Defendant's "unapproved

residence" at 524 E. Basin Street.  We conclude that the search was lawful since Agent Gaab had

reasonable suspicion (1) that Defendant was violating the terms of his parole by living at an

unapproved residence; and (2) that Defendant was living at 524 E. Basin Street.  The evidence

that Defendant was living at 524 E. Basin Street is overwhelming.  On at least three occasions,

Agent Gaab saw Defendant take keys from his pocket and enter the house at 524 E. Basin Street.

The U.S. Postal Inspector told Agent Gaab that Defendant was receiving mail there.  The

individual who answered the door at 319 Harding Boulevard – Defendant's approved residence –

told Agent Gaab that Defendant lived on Basin Street.  The anonymous sources who provided

corroborated information told Agent Gaab that Defendant lived on Basin Street.  The love letter

that Agent Gaab discovered from Jackson referenced Defendant's presence at "home" and an

intimate encounter that took place there at 4:00 in the morning.  Agent Gaab searched

Defendant's bedroom at the approved residence at 319 Harding Boulevard and found no male

clothing, no hygiene items of any kind, no alarm clock, and no sign of Defendant.  Agent Gaab

repeatedly observed Defendant's SUV parked at 524 Basin Street over the course of many

months, including at 7:00 in the morning.  (*See* Doc. No. 10 at 2-3.)  The SUV was often backed-

in the driveway, concealing the license plate.  Defendant recognizes the overwhelming nature of

evidence of reasonable suspicion.  At the suppression hearing, Defendant conceded that a

reasonable fact-finder could conclude that the evidence amounted to reasonable suspicion:

| | |
|---|---|
| THE COURT: | [A]re you conceding that your client was living on Basin Street in violation of the terms and conditions of his parole? |
| DEFENSE COUNSEL: | No, I'm not, but I'm conceding that there is sufficient evidence that a fact finder can conclude that possibly reasonable suspicion exists to make that conclusion.  I don't want to bind myself for any trial argument I might make, but for purposes of the hearing, I understand where the Court can conclude that it's more likely than not he was living on Basin Street than -- as opposed to Harding.  I understand that with regard to what could happen. |

(Suppression Hr'g Tr. 98.)  Moreover, in his Memorandum of Law in Support of Defendant's

Motion to Suppress Evidence, Defendant stated "Clearly, the agent possessed a reasonable

suspicion that Defendant was residing on East Basin Street with Terri Jackson."  (Def.'s Mem. of

Law at 5.)  Since Agent Gaab had reasonable suspicion that Defendant was residing at 524 E.

Basin Street and since 524 E. Basin Street was not an approved residence under the conditions of

Defendant's parole, Defendant would be in violation of his parole by residing there.

     Agent Gaab did not violate any of Defendant's rights by conducting a warrantless search

of 524 E. Basin Street.  Parole officers may conduct warrantless searches of parolees and their

residences based on "no more than reasonable suspicion" of parole violations.  *Baker*, 221 F.3d

at 444.  The warrantless search of 524 E. Basin Street was not illegal and did not violate

Defendant's Fourth Amendment rights.

Defendant relies on *Pennsylvania v. Edwards*, 874 A.2d 1192 (Pa. Super. Ct. 2005), for the proposition that "a parole agent is forbidden from entering an 'unapproved' residence based upon the reasonable suspicion standard unless consent is obtained orally or in writing from a person authorized to consent to search of the 'unapproved' residence." (Def.'s Mem. of Law at 8.)  In *Edwards*, police received an unverified tip that the defendant, a parolee, was residing at an unapproved address and selling drugs from that location.  *See Edwards*, 874 A.2d at 1196.  When the agents drove by the unapproved address, they saw the defendant in front of the residence and they also noticed a contractor working on the front door.  *Id.* at 1194.  The defendant told the agents that the house was owned by a friend who had given him a key and that he was there only to let the contractor inside.  *Id.*  The contractor corroborated that the defendant had indeed unlocked the door for him that day.  *Id.*  The agents then noticed a pager sitting inside the front door.  *Id.*  Because possession of a pager was a violation of the defendant's parole conditions, the agents entered the house and observed mail addressed to the defendant on a coffee table.  *Id.*  The agents searched the house without a warrant or consent and found contraband and several personal items tying the defendant to the residence.  *Id.*  As a result, the defendant was charged with various drug offenses.  *Id.*  The Pennsylvania Superior Court affirmed the trial court's suppression of the evidence seized during the search, reasoning that the parole agent's belief that the defendant was residing at the unapproved residence "was not supported . . . by reasonable suspicion but instead was merely speculation."  *Id.* at 1197.  The court noted that the tip the agents had received was unverified; there was a "vouched-for explanation" for the defendant's presence at the residence; and the pager could not be linked to the defendant (and might have belonged to the contractor).  *Id.* at 1196-97.

11

The evidence in this case is nothing like the speculative evidence in *Edwards*.  Agent Gaab had extensive corroborated evidence, including first-hand observations, that Defendant made 524 E. Basin Street his residence as outlined above.  Agent Gaab's belief that Defendant resided there was not speculation.  Simply put, this is not a case where the parole agents lacked reasonable suspicion of a parole violation before conducting a warrantless search.  *See, e.g.*, *United States v. Tirado*, 133 Fed. App'x 13, 18 (3d Cir. 2005) (unpublished opinion) (affirming denial of suppression motion since probation officer had reasonable suspicion to search the defendant's residence; informant was reliable and had first-hand knowledge); *Manuel*, 2007 WL 2601079, at *4 (denying motion to suppress evidence seized at the defendant's "unapproved" address since probation officer had reasonable suspicion that the defendant was residing there).

This Motion can therefore be decided without reaching the question of whether Agent Gaab executed a valid search warrant.[3]  Nevertheless, we note that Defendant and Jackson each had a reasonable expectation of privacy in 524 E. Basin Street by virtue of living there together.  At the very least, Defendant was a frequent overnight guest who had keys to the house.  *See Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990) (concluding that respondent's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable"); *Minnesota v. Carter*, 525 U.S. 83, 90 (1998) (finding that respondents who were not overnight guests but were "present for a business transaction and were only in the home a matter of hours" had no legitimate expectation of

---

[3] Defendant argues that the search warrant was defective because (1) state parole agents, like federal probation officers, are not permitted to be affiants on search warrants under Pennsylvania law; (2) state parole agents do not have the power to obtain and/or execute search warrants; and (3) the affiant did not allege the commission of a criminal offense in seeking the search warrant.  (Def.'s Mem. of Law at 10-13.)

privacy in the dwelling).  Unlike Defendant, however, Jackson was not a parolee whose residence could be searched based on "reasonable suspicion."  Parole agents appropriately obtained a warrant to search the house to protect Jackson's Fourth Amendment rights.  *See Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) ("It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'").  Whether this search warrant was valid could certainly affect Jackson's ability to suppress evidence that was seized from the house, but Jackson is not on trial.  She is not charged with any crimes.  Only Defendant faces the criminal charges.  Since a search warrant was not required to search Defendant's residence, Defendant cannot challenge the fruits of the search on grounds that the search warrant was defective.  *See United States v. Baker*, 221 F.3d 438, 441 (3d Cir. 2000) ("Fourth Amendment rights are personal rights, which, like some other constitutional rights, may not be vicariously asserted." (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).

Defendant argues that the search warrant was a ruse to "get in there to see whether [Defendant] had drugs or guns."  (Suppression Hr'g Tr. 102, June 24, 2009.)  We interpret Defendant's argument to mean that the evidence seized at 524 E. Basin Street should be suppressed under a "stalking-horse" theory.  A probation officer "acts as a stalking horse if he conducts a probation search on prior request of and in concert with law enforcement officers." *United States v. Williams*, 417 F.3d 373, 377 (3d Cir. 2005).  Under this theory, such a parole search would be invalid because it is "nothing more than a ruse for a police investigation."  *Id.* (internal quotation omitted).  However, the Supreme Court has held that "ordinary Fourth Amendment analysis dictates the propriety of a search," *Williams*, 417 F.3d at 378, and "there is no basis for examining official purpose," *United States v. Knights*, 534 U.S. 112, 122 (2001));

13

*see also United States v. Barnard*, No. 06-0073, 2008 WL 331424, at *4 n.5 (D. Del. Feb. 6, 2008) (noting that the Third Circuit has "squarely rejected" the argument that an administrative search was a "ruse" to enable agents to end-run the Fourth Amendment); *United States v. Little*, No. 06-0644, 2007 WL 1853975, at *5 (E.D. Pa. June 26, 2007) (noting that the Third Circuit "has never accepted the stalking horse theory and has questioned whether it remains valid in light of [*Knights*]") (citations omitted).  We will not examine the actual purpose of Agent Gaab in conducting the search of Defendant's residence at 524 E. Basin Street.  The search was supported by reasonable suspicion of a parole violation.  Agent Gaab initiated the search in the performance of his duties as a parole officer.  There is no evidence of any agreement between the parole officers and police.  The search was therefore legal.  *See, e.g.*, *Lowery v. United States*, No. 08-3571, 2009 WL 883312, at *3 (E.D. Pa. Mar. 25, 2009) (finding no Fourth Amendment violation where "the search of the residence and subsequent seizure of the firearm occurred pursuant to reasonable suspicion, as required by the parole consent agreement, and the presence of the police officers in addition to the parole officers was lawful").

Finally, we note that there is no basis in law or fact for Defendant's argument that there was a knock-and-announce violation.  Agent Gaab testified credibly that he knocked and announced his presence for two or three minutes before entering the house.  Agent Gaab's testimony is not controverted by the neighbor who observed the entry from her car across the street.  The neighbor testified that the agents waited outside the door for two or three minutes, consistent with Agent Gaab's recollection.  The neighbor further testified that, "I didn't hear any yelling, . . . and I cannot say that they were knocking."  (Suppression Hr'g Tr. 93, June 24, 2009.) The neighbor's testimony is somewhat equivocal:  she was across the street twenty-five feet away

inside of her vehicle where she heard no noise and "cannot say" that the parole agents were knocking.  Of course, even if there were a basis in fact for a knock-and-announce violation, it would not trigger the exclusionary remedy that Defendant now seeks.  *See Hudson v. Michigan*, 547 U.S. 586 (2006) (holding that violation of knock-and-announce rule did not require the suppression of all evidence found in the search); *United States v. Briggs*, No. 06-0715, 2008 WL 1745661, at *11 (E.D. Pa. Apr. 14, 2008) (noting that post-*Hudson*, "even if there was a violation of the knock-and-announce rule, suppression of the physical evidence seized from defendant's apartment still would not be warranted").

Accordingly, Defendant's Motion will be denied.

An appropriate Order will follow.

BY THE COURT:

_____

R. Barclay Surrick, J.

15